Filed 7/30/14  P. v. Tozier CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ERIC LEROY TOZIER,<br><br>　　　　　　Defendant and Appellant. | B250830<br><br>(Los Angeles County<br> Super. Ct. No. GA078621) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Suzette Clover, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Eric Leroy Tozier appeals from a conviction by jury of multiple sex offenses. Defendant contends his conviction on count 1 pursuant to Penal Code section 209, subdivision (b)(1)[1] for kidnapping to commit a sex offense, as well as the special kidnapping findings on counts 3, 4, 5, 7 and 10, must be reversed because of insufficient evidence of asportation. We conclude the record contains substantial evidence of asportation, and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Because defendant has raised just one narrow issue for review, we summarize only those facts material to our discussion.

In December 2009, V.F. was living with her three-year old daughter in the family home of her best friend, Lisa. Lisa's parents and defendant (Lisa's older brother) also lived in the home. On December 8, around 4:00 p.m., V.F. came home from dropping off her daughter at the home of the child's father and started to get ready for work. She went to take a shower in the communal bathroom of the family home. She locked the bathroom door before getting into the shower, as she always did. She could hear defendant playing music in his room. Defendant was the only other person home at the time.

At some point during her shower, she heard defendant turn off the music in his room. Defendant was "heavyset" and V.F. could hear the sound of his footsteps as he walked back and forth several times down the hallway and past the bathroom. At one point, she heard him go to the kitchen. V.F. then heard the sound of the bathroom doorknob being "jiggle[d]." V.F. was "stunned" when defendant pulled the shower curtain open. Defendant ordered V.F. out of the shower, telling her to get out on her own or he would "make [her] get out." She saw he was holding a kitchen knife about six to eight inches long.

---

[1] All further undesignated section references are to the Penal Code.

Defendant ordered V.F., still naked, to walk to his bedroom without a towel. Defendant's bedroom was about "four to five steps" down the hall from the bathroom. Defendant followed behind her, still carrying the knife. When they got into his room, defendant ordered V.F. to lie down on his bed. Defendant locked the door and told V.F. he had locked everybody out. He told her he would cut her if she screamed and said "we can do this all night long." V.F. believed only defendant had a key to his bedroom door.

Once in defendant's bedroom, defendant proceeded to rape and sodomize V.F. at knifepoint, among other criminal acts. At one point, defendant also took out a second knife and threatened V.F. with it. The assault went on for some 40 minutes. Afterwards, defendant told V.F. to finish her shower, ordered her not to tell anyone and took her cell phone away from her.

Defendant was charged by information with nine counts: kidnapping to commit a sex offense (§ 209, subd. (b)(1); count 1); two counts of forcible rape (§ 261, subd. (a)(2); counts 2 & 3); three counts of sodomy by use of force (§ 286, subd. (c)(2); counts 4, 8 & 9); forcible oral copulation (§ 288a, subd. (c)(2); count 5); and two counts of sexual penetration by foreign object (§ 289, subd. (a)(1); counts 7 & 10).[2] As to counts 2, 3, 4, 5, 7, 8, 9 and 10, it was specially alleged pursuant to section 667.61 that the offenses were committed in connection with a kidnapping and that a deadly weapon was used. It was also specially alleged as to all counts that defendant personally used a deadly weapon (a knife) within the meaning of section 12022, subdivision (b)(1). Further, it was alleged defendant had suffered a prior conviction for a lewd act on a child (§ 288, subd. (b)(1)), and had served three prior prison terms within the meaning of sections 667, subdivisions (b) through (i), section 1170.12 subdivisions (a) through (d), and section 667.5, subdivision (b), respectively.

---

[2]     The operative information does not contain a count 6.

Defendant pled not guilty and denied the special allegations. Following a jury trial, defendant was found guilty on counts 1, 2, 3, 4, 5, 7 and 10.[3] The special allegations on those counts were found true. Defendant admitted the prior conviction and the prior prison terms and waived trial on those allegations, which the court subsequently found true. Defendant was sentenced to 59 years to life in state prison. This appeal followed.

## DISCUSSION

Defendant's sole contention is that the record lacks substantial evidence of asportation such that his conviction on count 1 for kidnapping to commit a sex offense (§ 209, subd. (b)(1)), as well as the special kidnapping findings on counts 3, 4, 5, 7 and 10, must be reversed. We are not persuaded.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "We ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 509.) And, " '[a]lthough we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

---

[3]   Before deliberations began, two of the sodomy counts (counts 8 & 9) were dismissed on the prosecution's motion, and one of the rape counts (count 2) was amended, to conform to proof, to attempted rape.

4

Section 209, subdivision (b) provides as follows: "(1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or any violation of Section 264.1, 288, or 289, shall be punished by imprisonment in the state prison for life with the possibility of parole. [¶] (2) *This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense.*" (Italics added.)

The asportation element of aggravated kidnapping under section 209, subdivision (b) requires proof of two interrelated circumstances: (1) movement of the victim that is not "merely incidental" to the commission of the specified sex crime, (2) that results in an increased risk of harm to the victim. (*People v. Robertson* (2012) 208 Cal.App.4th 965, 983.) " 'For the first prong, the jury considers the distance the defendant moved the victim and the "scope and nature" of the movement. [Citations.] For the second, it considers whether the movement gave the defendant "the decreased likelihood of detection" and an "enhanced opportunity to commit additional crimes." [Citation.]' [Citation.]" (*Ibid*.) The Supreme Court explained in *People v. Dominguez* (2006) 39 Cal.4th 1141, 1151-1152 (*Dominguez*) that the two-pronged standard requires a "qualitative evaluation" and "each case must be considered in the context of the totality of the circumstances."

In urging this court to find insufficient evidence of the first prong of the asportation element, defendant relies heavily on the relatively short distance V.F. was moved (from the bathroom to defendant's bedroom inside the same home), and defendant's assertion the prosecutor conceded the rape could not have occurred in the bathroom. Neither point is persuasive.

V.F. testified that defendant forced her from the shower, at knifepoint, to walk down the hallway, approximately four to five steps, to his bedroom, whereupon he then ordered V.F. onto his bed and locked the bedroom door. "For aggravated kidnapping ' " . . . there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong." ' [Citation.]" (*People v. Aguilar* (2004) 120 Cal.App.4th 1044,

5

1048 [forcibly moving rape victim down sidewalk away from lighted area to a darker area constituted sufficient "movement of the victim" within the meaning of the statute]; accord, *Dominguez*, *supra*, 39 Cal.4th at p. 1152 ["we have repeatedly stated no minimum distance is required to satisfy the asportation requirement"].) We find that defendant's having forced the victim to walk, naked and at knifepoint, into his private, locked bedroom, was not trivial or insubstantial movement outside the scope of the statute.

Further, nowhere in the record do we find a concession by the prosecutor that the rape could not have occurred in the bathroom, thus rendering the movement into the bedroom a necessary aspect of the commission of the rape. " '[A] rape . . . does not necessarily require movement to complete the crime.' [Citation.] Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*People v. Shadden* (2001) 93 Cal.App.4th 164, 169 (*Shadden*).) The evidence presented to the jury was that the bathroom was the communal bathroom in the family home which was large enough to be occupied at the same time by at least two people. It requires no stretch of imagination or speculation by the trier of fact to reasonably infer from such evidence that a rape could occur in that bathroom.

Nor is it significant that all the movement occurred inside the home. Defendant moved V.F. from the bathroom -- where other family members, if they had come home, were more likely to seek entry and discover defendant's crimes -- to defendant's own bedroom behind a locked door where detection was more difficult. (See, e.g., *People v. Vines* (2011) 51 Cal.4th 830, 871 [movement of store employees from front of store, down stairwell and into a walk-in freezer sufficient evidence for jury to find scope and nature of movement satisfied asportation element despite movement taking place in same premises], and *Shadden*, *supra*, 93 Cal.App. 4th at p. 169 [moving rape victim nine feet from front of store to back room of same premises sufficient to support asportation]). The evidence of the scope and nature of the forced movement here was sufficient to

reasonably support the jury's determination that such movement was significant and not "merely incidental" within the meaning of section 209, subdivision (b).

As to the second prong of the asportation element, defendant argues the movement from the bathroom to defendant's private bedroom was movement from one similar room to another, with no substantial change in the nature of the environment that increased the risk of harm to V.F. We disagree.

Defendant's bedroom was his private room, with a door that locked, with much less risk of detection than the bathroom in the family home used by other household members, and it had more space to commit his intended crimes. Moreover, it increased the risk of harm to V.F. and provided defendant with "enhanced opportunity" to commit further crimes against her. (*People v. Robertson*, *supra*, 208 Cal.App.4th at p. 983.) Upon forcing V.F. into his room and locking the door, defendant told V.F. they could be there "all night long." V.F. believed that only defendant had a key to his room so no other family member, even if they came home, would be able to get in, and defendant threatened her with both knives if she made any noise. In the privacy of his bedroom, defendant had access to two knives and could therefore have easily rearmed himself (unlike in the bathroom), had V.F. been able to get the kitchen knife away from him and tried to escape. As a result, defendant was able to assault V.F. for 40 minutes and commit multiple crimes against her. It is much less likely that defendant could have evaded detection in the communal bathroom for 40 minutes than in his private bedroom where he could feign sleep. The evidence amply supported the increased risk of harm and fear to V.F. (*People v. Tuan Van Nguyen* (2000) 22 Cal.4th 872, 886 [increased risk of harm in section 209 includes increased risk of psychological harm to the victim].)

## DISPOSITION

The judgment of conviction is affirmed.

GRIMES, J.

We concur:

BIGELOW, P. J.           RUBIN, J.

7